DURACELL INC., Plaintiff,

v.

SW CONSULTANTS, INC.; Power Plus of America, Inc.; Garry Syme; Andrew S. "Steve" Whaley; and Ronald Putt, Defendant.

No. 1:88–CV–2786–RHH.

United States District Court, N.D. Georgia, Atlanta Division.

May 17, 1989.

Wm. A. Clineburg, Daniel James King, Sean R. Smith, King & Spalding, Atlanta, Ga., Gregg A. Dwyer, Bethel, Conn., Ronald S. Cornell, Needham, Mass., for plaintiff.

James C. Gaulden, Stephen Craig Whicker, Brent & Valianos, Atlanta, Ga., Robert A. Meister, Milgrim, Thomajan & Lee, New York City, for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the court on four motions representing the parties' inability to settle disputes regarding discovery. Plaintiff has filed a motion to compel and defendants have filed a motion for a protective order both involving certain interrogatories and requests for production of documents. Two nonparties, Amcel Corporation ("Amcel") and Activ Industries ("Activ") have also filed motions for protective orders in response to subpoenas *duces tecum* served upon them by plaintiff.

This case was brought by a large manufacturer of alkaline batteries, Duracell, Inc. ("Duracell"), who has approximately 45% of the market share of domestic battery sales, against a small competitor, Power Plus of America ("Power Plus"), and a battery consulting firm, SW Consultants, which were started by former employees of Duracell.[1] The plaintiff has alleged patent

---

1. The three former employees are named individually in the suit as well.

infringement, theft of trade secrets and confidential information, and state and federal RICO violations. The disputes that bring this case before the court now center around the plaintiff's requests for information and documents regarding defendants' financial strategy, sources of supplies and marketing information.

The complaint in this case sets forth very broad allegations of misconduct.[2] And Duracell's discovery requests broadly touch upon almost all aspects of its competitor's business dealings.

DISCUSSION

I. Defendants' Motion for a Protective Order

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, this court may issue a protective order from discovery when justice so requires to protect a party from annoyance, embarrassment, oppression or undue burden or expense. The Federal Rules specifically recognize that "trade secret[s] or other confidential research, development or commercial information" are an appropriate subject for a protective order. Fed.R.Civ.P. 26(c)(7). In a competitive market, an entity's commercial information, its strategies, techniques, goals and plans can be its life blood. The discovery rules are not intended to forfeit a party's ability to compete effectively in the market by opening up tangentially relevant financial and marketing information to competitors.

In an attempt to balance the divergent interests of one party who seeks discovery and the opposite party trying to protect its commercially sensitive and confidential information, the courts have developed a three part test. *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323 (S.D.Fla.1985). A party seeking a protective order must establish: (1) that the information sought to be protected is "confidential", and (2) that its disclosure might be harmful. The

burden then shifts to the party seeking the information to show: (3) that the information sought is relevant and necessary at this point in the litigation. *Id.* at 326.

Basically there are three categories of information that the defendants are trying to protect: marketing information, financial information and sources of supplies.[3] The court must consider whether each of these categories of questions meet the three prong test for a protective order—if they are aimed at confidential information, if disclosure of that information might be harmful to defendants and if the information sought is relevant and necessary at this point in the litigation.

*Marketing Information*

■ Plaintiff has attempted to discover Power Plus's marketing strategy, battery sales (present and projected), customer lists, and other information about defendants' marketing approaches. Courts have consistently held that marketing information is confidential commercial information and have afforded it some protection from discovery. *American Standard v. Pfizer, Inc.*, 828 F.2d 734 (Fed.Cir.1987). It is obvious that a small company trying to break into a market dominated by a few large corporations would have a cognizable interest in keeping information regarding its marketing strategy, projected sales and customer lists confidential. *See, e.g. Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866 (D.Pa.1981).

Disclosure of Power Plus's marketing information to a large competitor could put Power Plus at a serious competitive disadvantage. For example, if a company as large and powerful as Duracell knew that Power Plus had plans to commence its market entry by focusing on certain market niches, it could sell aggressively to those niches and prevent Power Plus a successful entry. Defendant's Reply Brief, p. 13. If

---

**2.** The broad and vague nature of the complaint is discussed in this court's order of May 12, 1989. In that order, two counts of the complaint were dismissed for failure to plead with sufficient particularity, and several of the other counts survived by barely meeting the minimum requirements of notice pleading.

**3.** Both parties generally discuss a fourth category-technical information—in their briefs, however, the court has not been shown any discovery requests relating to technical information that defendants have not answered.

Duracell were able to identify Power Plus's present and future customers and the markets they are trying to enter, it could place Power Plus's future in the battery industry in jeopardy.

■ Defendants have shown that their marketing information is confidential and that its disclosure is potentially harmful. The burden now shifts to the plaintiff to show that this information is relevant and necessary in the prosecution of the litigation at this time. *Empire of Carolina,* 108 F.R.D. at 327. Plaintiff's response to this burden is unsatisfactory. Duracell's only justification for intrusion into defendants' marketing information is that it needs to uncover the entire parameters of defendants' "scheme". The court finds it inconsistent that plaintiff asserts that it needs defendant's confidential marketing and financial information to discover the scope of defendants' scheme to misappropriate trade secrets, and yet so little discovery is aimed at uncovering what trade secrets or confidential information was stolen by whom, how and when. It would be to the plaintiff's advantage to inform the court of the details of the misappropriation as early as possible so that any use of plaintiff's trade secrets could be enjoined. These discovery requests seem overly concerned with the internal financial affairs and marketing strategies of an emerging competitor.

Plaintiff asserts that it must discover the marketing strategy of Power Plus in order to completely assess the damages it has suffered. The court finds that at this stage of the litigation, plaintiff's argument that it must discover into damages is not compelling. Plaintiff has not shown any evidence linking defendants to any wrongdoing. The court must balance the potential harm to the defendants from disclosure against the need plaintiff has shown. *Empire of Carolina,* 108 F.R.D. at 326; *Cutler v. Lewiston Daily Sun,* 105 F.R.D. 137 (D.Me.1985). Determination of whether the need outweighs the harm falls within the sound discretion of the trial court. *Id.* The court finds that this balance tips decidedly in favor of protecting Power Plus's

marketing data until plaintiff shows it is necessary for the litigation. If at a later point in the discovery process plaintiff can submit evidence supporting its claims which would make inquiry into the scope of damages appropriate, the court will, of course, consider modifying the protective order issued today.

*Financial Information*

■ The second category of information to which defendants seek to limit access involves financial data. Plaintiff has asked for information and documents concerning: expenditures on all phases of defendants' battery operation including research and development, organization, marketing, and capital equipment, financial statements, bank accounts and bank records, net profits and losses, investments, sources of financial support, and the ownership of real property.

Armed with this information a competitor could determine the strength or vulnerability of a company's financial condition. This type of information is sensitive especially for a company in a vulnerable competitive position. *Empire of Carolina,* 108 F.R.D. 323. Courts have held that this is the type of commercial information to which 26(c)(7) Fed.R.Civ.P. extends protection. *Tavoulareas v. Piro,* 93 F.R.D. 24 (D.D.C.1981); *Zenith,* 529 F.Supp. 866; *Empire of Carolina,* 108 F.R.D. 323. Defendants have adequately demonstrated that the release of financial information of this kind could be devastating to a small company's emergence into the market. Plaintiff again asserts that the information is important for discovering the scope of "defendants' scheme" and for assessing damages. The court must balance the plaintiff's need for this information at this stage of the litigation against the harm the defendant would suffer from disclosure. *Empire of Carolina,* 108 F.R.D. 323. The court finds that the relevance of Power Plus's financial strategy is indirect and circumstantial at best. Power Plus's financial information may not be discovered at this stage of the litigation.

*Supplier Source*

■ Finally, plaintiff has asked defendant to identify all present and past suppliers and all other sources of manufacturing equipment, battery supplies, raw materials and other components. The source of Power Plus's battery supplies is kept confidential by the company. Both parties agree that supply agreements and arrangements can be very valuable in the manufacturing industry. With complete information about Power Plus's supply sources, an industry giant could exert economic pressure on a small supplier making it reluctant to deal with a risky customer such as Power Plus.

However, in its reply brief, plaintiff has submitted affidavits explaining that the suppliers of certain materials are extremely relevant to the plaintiff's case. Therefore, balancing the interests of both parties, the court orders plaintiff to submit new interrogatories which ask for the suppliers of only those materials which are specifically relevant to the misappropriation claims. These supplier lists are to be used solely for the purposes of this litigation and the court will impose sanctions upon both the attorneys and the parties if the information produced pursuant to this order is misused.

## II. Amcel and Activ's Motion for a Protective Order

■ Amcel Corporation owns 25% of the shares of Power Plus, and Activ Industries is the U.S. subsidiary of Cegasa (the foreign investor and majority shareholder of Power Plus). Plaintiff has requested that both these nonparties produce certain documents at their depositions. Amcel and Activ have filed motions for protective orders to prevent the discovery of these documents. Many of the requests for production parallel the discovery requests served on the defendants. As to the documents containing information discussed in Section I of this order, the foregoing portions of this order apply to the information sought through subpoena *duces tecum* as well. Documents which are not discoverable through the defendants may not be discovered through nonparties.

■ The remainder of the documents plaintiff has requested seem to be within the scope of discovery under the federal rules. Amcel and Activ have not shown the court any harm that they or the defendants will suffer from disclosure of the financial agreements between themselves and the defendants. If the defendants are in possession of valuable trade secrets or confidential information belonging to Duracell, defendants' financial agreements with large investors may be quite relevant.

Amcel and Activ are ordered to respond to plaintiff's subpoena *duces tecum,* except as to that information covered by the forgoing sections of this order. The confidentiality agreement entered into by the parties should, of course, cover any material produced by Amcel or Activ.

CONCLUSION

Plaintiff's motion to compel the answers to interrogatories and the production of documents is GRANTED in part and DENIED in part and defendant's motion for a protective order is GRANTED in part and DENIED in part. Until further order of this court, Defendant does not have to produce through discovery marketing information or financial information as defined in this order. However, defendant's must answer questions formulated by plaintiff which request information regarding the suppliers of certain material and machinery.

Amcel Corporation's and Activ Industries' motions for protective orders are DENIED.

So ORDERED.