NESTLE FOODS
CORPORATION, Plaintiff,

v.

AETNA CASUALTY AND SURETY
COMPANY, et al., Defendants.

Civ. A. No. 89–1701 (CSF).

United States District Court,
D. New Jersey.

Jan. 26, 1990.

William H. Hyatt, Jr., Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for plaintiff.

Thomas R. Curtin, Ribis, Graham, Verdon & Curtin, Morristown, N.J., for defendant, Ins. Co. of North America.

Jane M. Wieder, Harwood & Lloyd, Hackensack, N.J., for defendant, Aetna Cas. and Sur. Co.

John C. Sullivan, Manta and Welge, Cherry Hill, N.J., for defendant, Liberty Mut. Ins. Co.

M. Carole Duffy, Einhorn & Harris, P.C., Denville, N.J., for defendant, The American Ins. Co.

## MEMORANDUM AND ORDER

FREDA L. WOLFSON, United States Magistrate.

In this action, plaintiff seeks declaratory relief and money damages arising from defendants' alleged breach of their contractual obligations to provide insurance coverage to plaintiff for certain environmental harm. The harm in the present case stems from plaintiff's shipping of large volumes of coffee production materials from its manufacturing facility to the Lone Pine landfill.

Presently before the Court are the motions of defendants, Aetna Casualty and Surety Company (hereinafter "Aetna") and Liberty Mutual Insurance Company (hereinafter "Liberty")[1] for a protective order. The proposed umbrella protective order would require that all documents and other discovery material, some of which has already been provided to the plaintiff without a protective order, be treated as confidential and used only for purposes of this lawsuit. It also limits the audience who may review the documents and provides for

---

1. Liberty joined in the motion brought by Aetna by way of letter and submitted its own proposed protective order. Liberty's motion was received in chambers on December 29, 1989, eighteen days after Aetna's motion had been filed. This was also *after* Liberty Mutual had already produced the discovery for which it now seeks protection.

sealing documents classified as "confidential". The plaintiff opposes defendants' motions on two bases: that defendants have not made the requisite showing of good cause, and that the motions are untimely. Plaintiff also seeks attorneys' fees in connection with opposing these motions. This matter is being considered pursuant to *Fed.R.Civ.P.* 78, and having considered the moving papers and the opposition thereto, the Court for the reasons discussed below denies defendants' motions.

## I.

▆ The Court in its discretion can enter a protective order upon a showing of good cause. *Fed.R.Civ.P.* 26(c); *See Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). The party seeking the protective order bears the burden of persuasion. *Id.* at 1121.

Defendants base their need for such relief on the ground that the documents they are seeking to protect contain proprietary business/commercial information. The documents can be grouped into four categories: (1) claim files, (2) underwriting files, (3) engineering files, and (4) claim and underwriting manuals. These documents relate to plaintiff's Freehold, New Jersey facility and the insurance claim originating out of shipments to the Lone Pine Landfill.

Defendants assert that the claim, underwriting and engineering files reflect the procedures they use in evaluating risks and handling of claims, while the claim and underwriting manuals reveal their internal business practices. In seeking a protective order regarding the disclosure of these documents, the insurers rely upon Rule 26(c)(7),[2] which has been interpreted to protect from disclosure, material which would otherwise harm the disclosing party by placing it at a commercial disadvantage. *See Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 529 F.Supp. 866, 890 (E.D.Pa.1981); *United States v. Exxon Corp.,* 94 F.R.D. 250, 251 (D.D.C.1981); *Parsons v. General Motors Corp.,* 85

F.R.D. 724, 726 (N.D.Ga.1980). But irrespective of which portion of Rule 26 is relied upon, the movant for a protective order must still establish good cause to justify a protective order. "[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc.,* 785 F.2d at 1121; *See also United States v. Hooker Chemicals & Plastics Corp.,* 90 F.R.D. 421, 425 (W.D.N.Y.1981).

▆ In the context of protective orders, which seek to avoid the harm of "competitive disadvantage" from unfettered disclosure of documents, the Court in *Zenith* stated that, "the injury that would flow from disclosure is patent, either from consideration of the documents alone or against the court's understanding of the background facts. The court's common sense is a helpful guide." *Zenith Radio Corp.,* 529 F.Supp. at 891. This Court finds that defendants' actions and inability to identify any specific harm prevent them from establishing the good cause needed for a protective order.

As a matter of common sense, if one were truly fearful of competitive disadvantages, one would make every effort to properly safeguard information to prevent disclosure to competitors. *See, e.g., American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 740–41 (Fed.Cir.1987). In the instant case, defendants have been quite open in sharing the allegedly confidential information with their competitors.

Specifically, the plaintiff, without refutation from defendants, points to two examples of cooperation among the insurers, which presupposes disclosure to competitors. Firstly, defendants belong to the Insurance Environmental Litigation Association, a trade association of liability insurers formed to file *amicus curiae* briefs in courts throughout the country opposing policy holders in environmental coverage litigation. (Dolin Aff'd., ¶ 12). Secondly, in defending against environmental cover-

---

**2.** Rule 26(c)(7) provides "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way".

age claims the defendants freely disclose information as part of their joint defense. (Dolin Affid., ¶ 12). Such cooperation is further evidenced by defendants' proposed protective order, which asks this Court to recognize and sanction the existence of a joint defense privilege.[3] Therefore, having joined with, and shared information among, other insurers, the defendants' argument that they would lose their competitive advantage in the insurance field if the documents were disclosed is disingenuous.

Furthermore, the age of some of the documents at issue undercuts defendants' position. Specifically, the insurance policies at issue here were underwritten from 1960 through 1983. Thus, some of the documents relevant to the underwriting of these policies are thirty years old. The purported need for protection is substantially diminished where the passage of time has made such documents stale. *See In re Agent Orange Product Liability Litigation*, 104 F.R.D. 559, 575 (E.D.N.Y.1985), and cases cited therein.

Defendants have not responded to these points.[4] There has been a total failure by these insurers to specify how the documents they seek to protect are confidential in light of their age and defendants', *inter sese*, cooperative sharing of information, and how disclosure might be harmful. Defendants have submitted no affidavits; solely the conclusory arguments of counsel. In Aetna's brief there are only general and vague references to harm.[5] Rather

---

3. Aetna's proposed protective order states in part, Para. 9—

> communications, discussions and information shared among the insurers in connection with joint defense efforts in these coverage actions shall not constitute a waiver of the attorney-client privilege, the work product privilege or other privileges to the extent that such privileges may apply. Cooperative efforts among the insurers and their counsel regarding discovery, motion practice and trial preparation shall be for the purpose of litigating in an organized fashion, and shall not be discoverable or communicated to the trier of fact. If an insurer withdraws from any cooperative effort, prior communications between that insurer and other insurers and work product shared by or with the withdrawing insurer will not be deemed to have lost the protection of the attorney-client privilege or any other privilege.

4. The Court is constrained to note a trend among counsel in cases pending before this Court. Litigants are seeking protective orders with increasing regularity. Since most often the parties will consent to such non-disclosure, the parties seek only the Court's imprimatur to their agreement and do not come forward with any showing of good cause. However, when as here, consent is unavailing, the movant seems unwilling or unable to make the required showing—appearing to believe that a protective order should be available for the asking. The law is to the contrary. Parties should not assume that the court will accede to a protective order because no substantial harm to the party opposing the application can be shown; the requirements of Rule 26 must be satisfied by the movant in each case.

5. The Court has excerpted the portions of Aetna's brief where there appear any justification for a protective order:

> Aetna is asking for an order preserving the confidentiality of the documents produced by Aetna so that Aetna's market position and competitive advantage are not jeopardized. (Aetna's Brief, p. 2).
> Aetna's documents contain proprietary business/commercial information. It is Aetna's position that the potential harm to Aetna resulting from unrestricted production of these documents outweighs any inconvenience which may be caused to Nestle by the existence of a protective order. If there is no protective order in effect, Aetna has absolutely no control over who has access to its documents or what use will be made of them. Aetna is greatly concerned over the potential misuse of the documents and the resulting loss of its competitive advantage within the insurance industry. (Aetna's Brief, p. 8).
> Aetna's claim files, underwriting files, engineering files and claim and underwriting manuals, consist of information regarding its "formula" for evaluating risk, its "pattern" in handling hazardous waste claims. These documents comprise a "compilation of information" which is used by Aetna as it conducts its day-to-day business and which gives Aetna a competitive advantage over others in the insurance industry who have not developed the same methods. (Aetna's Brief, p. 9).
> Aetna has valid and justifiable business reasons for seeking a protective order to preserve the confidentiality of its documents. The potential for injury to Aetna resulting from uncontrolled dissemination of its document is clear and possibly substantial. As with any other commercial situation, Aetna is unwilling to have its competitors gain access to its underlying work product. If Aetna's documents are produced without protection, Aetna will be unable to control dissemination and use of its documents and thereby be unable to protect its market position. (Aetna's Brief, p. 12).

than making a particularized showing of harm, defendants seem to believe that they can satisfy their burden by explaining that the protective order proposed does not prejudice plaintiff since it does not restrict discovery but only limits disclosure to the instant case.

The court in *Cipollone* was explicit that the burden of demonstrating good cause rests upon the movant and that such a showing requires that the harm be significant and be substantiated by specific examples or articulated reasoning. *Cipollone*, 785 F.2d at 1121. After remand, the defendants in *Cipollone* were still unable to specify or elaborate the injury they might suffer from disclosure. *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86 (D.N.J. 1986). On appeal, the third circuit affirmed the lower court's denial of a protective order, finding that the petitioners failed to provide the district court with a single document as a "concrete example of the type of harm they would suffer." *Cipollone v. Liggett Group, Inc.*, 822 F.2d 335, 346 (3d Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). The Third Circuit so found, despite petitioners' offer of proof that the value of defendants' stock was linked to the litigation. In the instant case, defendants do not even provide the Court with the type of proof which was found insufficient in *Cipollone*. Rather, the Court is presented with bald allegations of confidentiality and harm in direct contravention of the *Cipollone* mandate.

While this Court recognizes that umbrella-type protective orders, such as submitted by defendants here, are valid, nonetheless, the movant still is required to make a threshold showing of good cause. *Cipollone*, 785 F.2d at 1122. But as illustrated by the broad and conclusory allegations in Aetna's brief, fn. 4, *supra*, there is a total absence of specificity from which this Court can find that these documents are confidential and if so what harm will result from their disclosure.

Moreover, if the basis for defendants' motion is to prevent information from being disseminated to other potential litigants,[6] then defendants' application must fail. With increasing frequency, defendants, as well as other insurers, are finding themselves embroiled in litigation over whether there is coverage for property damage as a result of environmental harm. The courts have emphatically held that a protective order cannot be issued simply because it may be detrimental to the movant in other lawsuits. *United States v. Hooker Chemicals & Plastic Corp.*, 90 F.R.D. at 426; *Kamp Implement Co., Inc. v. J.I. Case Co.*, 630 F.Supp. 218, 219 (D.Mont.1986); *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 153 (W.D.Tex.1980). Using fruits of discovery from one lawsuit in another litigation, and even in collaboration among various plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure. *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. at 426. The harm possibly emanating therefrom does not form a basis for a protective order.

## II.

■ Finally, in addition to defendants' inability to show good cause, the Court must consider the untimeliness of defendants' motions. Plaintiff contends that the motion for a protective order should be denied since the defendants have failed to avail themselves of the opportunity to negotiate or move for a protective order in a timely manner. In this connection, the following chronology is relevant: defendants were served with interrogatories and document requests on July 17, 1989; this Court thereafter ordered on July 29, 1989 that defendants respond to the discovery requests no later than September 29, 1989; following a request by defendant's counsel, plaintiff agreed to extend the response date to October 10, 1989; on September 28, 1989, Aetna sent its written responses to plaintiff's counsel and stated that the doc-

---

**6.** "While the disclosure of Aetna's documents produced in this litigation may not dramatically impact Aetna's competitive advantage, the combined disclosure of documents produced in this and other litigations would have a dramatic and noticeable impact on Aetna's place in the insurance industry." (Aetna's Brief, pp. 8–9).

uments are available; Liberty produced both its written responses and its documents on October 10, 1989 without a protective order; plaintiff made numerous unsuccessful efforts to obtain Aetna's documents throughout October and into November, 1989; in mid-November, Aetna indicated for the first time its desire to obtain a protective order as a condition precedent to the production of its documents; on November 17, this Court informed the parties that since plaintiff would not consent to a protective order, Aetna would have to proceed by formal motion; pending the resolution of this motion which was ultimately filed by Aetna on December 8, 1989, Aetna produced its documents to plaintiff for plaintiff's counsel's use only; on December 15, 1989, Liberty Mutual, by way of a letter joined in Aetna's motion, despite having previously produced its documents without any request for protection.

Prior to the 1970 amendments to the Rules of Federal Civil Procedure, protective orders were governed by *Fed.R.Civ.P.* 30(b), and requests for such orders were required to be made in a "seasonable" manner. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2035, at 262. Although this requirement was not explicitly adopted in Rule 26(c), courts may still consider timeliness as a factor in their decisions.

In *United States v. Panhandle Eastern Corp.*, 118 F.R.D. 346 (D.Del.1988), the court noted that even if the movant had made a showing of good cause, the motion would have to be denied as untimely since the defendants filed their motion three weeks after the due date for the discovery. *Id.* 350–351. *See also United States v. International Business Machines, Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y.1978). The caveat being that the timeliness of the motion may be excused when there is no opportunity to move for a protective order. *Panhandle Eastern Corp.*, 118 F.R.D. at 346.

In the instant case, defendant Aetna waited over two months, after the date discovery was due, to formally file its mo-

tion. Although Liberty timely produced its documents on October 10, it waited over nine weeks before it ultimately joined in Aetna's motion. While this Court looks first to the substantive ground of whether defendants have demonstrated good cause for a protective order, nonetheless, the Court cannot ignore the untimeliness of these motions.

### III.

In summary, the Court is unable to find that defendants have met their burden of establishing good cause. The protective order is broadly based and the showing made by defendants for entry of such an order lacks this Circuit's requirements for detail and specificity. In addition, defendants have failed to file their motions in a seasonable manner.

Finally, while it is true that Rule 26(c) does authorize a court to award attorneys' fees for the party who successfully opposes a protective order, such relief is discretionary. The court can deny attorneys' fees where it finds that the bringing of the motion was substantially justified or that other circumstances make an award of expenses unjust. *Fed.R.Civ.P.* 37(a)(4). Here, the Court finds that, since defendants have been successful in securing protective orders in other similar cases,[7] there was sufficient justification for defendants to believe they were bringing a motion in good faith and not for purposes of harassment or to delay the litigation.

### ORDER

IT IS on this 25th day of January, 1990,

ORDERED that defendants Aetna and Liberty's motions for a protective order are hereby denied; and it is further

ORDERED that plaintiff's request for attorneys' fees is hereby denied.

---

7. Aetna notes in its brief that similar orders have been obtained in unrelated cases.