**Larry BRITTAIN, Fred C. Hitchcock, Dean Proctor and Ted Proctor, Plaintiffs,**

v.

**The STROH BREWERY COMPANY, Defendant.**

**No. C–90–30–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

April 12, 1991.

Clinton Eudy, Jr., Greensboro, N.C., for plaintiffs.

Mark N. Poovey, Jeffrey R. McFadden, Winston–Salem, N.C., for defendant.

### ORDER

RUSSELL A. ELIASON, United States Magistrate Judge.

This matter comes before the Court on defendant's motion to compel production of documents served on March 26, 1990. Plaintiffs responded with a cross-motion to compel defendant to answer interrogatories and produce documents for their own discovery served on February 1, 1990. Finally, defendant moves for a protective order limiting access to the discovery which plaintiffs seek in their motion to compel. The matter was set for a hearing.

### Factual Background

Plaintiffs were four of the five owners of Mark IV, Inc., a business which distributed malt beverages at wholesale. The other owner was Joseph E. Lillard. Each of these owners owned a 20% share of the company. Mark IV became a distributor of defendant Stroh Brewing Company ("Stroh") in the first part of 1984. In November, 1986, the owners of Mark IV decided to sell their interests to I.H. Caffey Distributing Company, Inc. Defendant refused to approve the change of control. Thereafter, the four plaintiffs sold all of their stock to Mr. Lillard in August, 1988. Plaintiffs claim that the difference in sale prices between the proposed sale to Caffey and the ultimate sale to Lillard caused them $300,000.00 in damages, plus loss of interest. The complaint sets out a portion of the wholesale agreement between plaintiffs and defendant. That agreement states that defendant will not unreasonably withhold its approval of a proposed control change. Plaintiffs assert defendant's failure to approve the sale to Caffey was unreasonable and in violation of the contract.

### Contentions of the Parties

In its motion to compel discovery, defendant argues that plaintiffs have no legitimate grounds for refusing to answer the interrogatories and produce the documents. Therefore, defendant requests sanctions in the form of expenses and attorney's fees pursuant to Fed.R.Civ.P. 37(a)(4). Plaintiffs respond by stating that even though defendant's discovery requests are overly broad and not tailored to the issues of the

case, they have agreed to produce the documents nevertheless.

At the hearing, the Court was informed that plaintiffs produced all of the discovery except their tax returns. Having assured the Court in their brief that they would produce all documents, plaintiffs are now estopped from retracting that commitment, absent extraordinary good cause. They fail to establish such cause. Therefore, plaintiffs shall produce tax returns for the years 1985–1989. The returns and information shall only be disclosed to defendant's counsel, including in-house counsel, and expert witnesses who shall be informed that the information shall only be used for purposes of this litigation.

In resisting defendant's motion for attorney's fees and expenses, plaintiffs vigorously deny that they are attempting to hold defendant's discovery hostage in order to force defendant to produce documents sought by plaintiffs. Rather, plaintiffs argue that it is defendant who is attempting to hold plaintiffs' discovery hostage by insisting on an unduly restrictive protective order before it will produce the documents. Plaintiffs pointed out that it was defendant who failed to timely request the Court for a protective order, but rather unilaterally insisted on it. Moreover, defendant filed its motion for a protective order only after plaintiffs moved to compel discovery. Even then defendant failed to support its protective order by any factual showing. Only after plaintiffs exposed this deficiency did defendant file an affidavit and *in camera* documents in support of the belatedly filed motion for protective order.

In ruling on a motion for a protective order, Fed.R.Civ.P. 26(c) provides for the imposition of costs and expenses, on the terms permitted by Fed.R.Civ.P. 37(a)(4). Defendant caused plaintiffs to incur unnecessary expense by not timely moving or supporting its motion for a protective order. This extra cost offsets the attorney's fees due defendant for its motion to compel discovery. Therefore, the Court will not assess either side any costs or expenses.

The crux of the remaining dispute between the parties involves plaintiffs' request to view documents which defendant considers to be confidential. The documents relate to defendant's approval of other, successor distributors.

Defendant does not dispute that the documents relating to the issue of change of control are relevant to the lawsuit. In fact, several months after it filed its response objecting to producing the documents, defendant proposed a protective order that would permit plaintiffs' counsel and expert witnesses to examine the documents. Other persons could examine the documents only if plaintiffs identified them and defendant Stroh did not object within ten days. Plaintiffs claim this restriction is unreasonable. They argue that it would be sufficient if plaintiffs required that any person, not an employee of defendant or otherwise privy to the information, merely sign an affidavit agreeing not to disclose the information. Plaintiffs contend that defendant seeks to gain unfair advantage and control of the litigation by insisting on its prior approval of plaintiffs and their witnesses before disclosing documents to them.

In support of its motion for a protective order, defendant Stroh presents the affidavit of its in-house counsel who indicates that the information on Stroh's distribution strategy is closely guarded by the company. It is not given to outsiders and, within the company, is limited to those employees who have a need to know. The documents involve the evaluation, performance and the future prospects of Stroh's distributors. The distributor strategy documents were also submitted to the Court for *in camera* inspection. They encompass the years 1985–1988. They discuss control changes and the reasons for making such changes, along with an evaluation of the distributor's business. Counsel states that release of the documents could damage Stroh's relations with its distributors who might disagree with Stroh's evaluation. This, in turn, would chill Stroh from making the candid evaluations it needs in order to plan its market strategy.

Counsel's affidavit indicates that the malt beverage distribution business is highly competitive and that Stroh's competitors

could identify its market strategy and use this to the detriment of defendant. For example, certain key distributors could be pressured by competitors to promote products in a way which could severely hurt Stroh. Finally, counsel indicates that even slight economic injury could erode Stroh's declining market share. It is one of the smaller competitors in the beer business.

The second set of documents at issue involve changes in control of distributors for the years 1984 to present. Again, the affidavit by in-house counsel indicates that the documents are not shared outside of Stroh and, within the company, they are limited to on a need to know basis. In fact, these documents go directly to Stroh's credit department and are not reviewed by field sales personnel. The documents contain financial information, sales data and information with respect to control changes which are requested, proposed plans, and the objectives of prospective transferees. The information in these documents is considered to be confidential. Stroh agrees in writing, with each of its distributors, that the information will not be shared.

Defendant Stroh shows that two of the plaintiffs, *i.e.*, Ted and Dean Proctor, are still in the beer distribution business and represent direct competitors of Stroh, as well as Stroh itself. Thus, sharing market strategy information with them could endanger Stroh with respect to its competitors and damage relations with its other distributors. Plaintiffs urge the Court to deny defendant's motion for a protective order because it is not timely and is overly restrictive.

### Discussion

#### I.

### Time for Moving for a Protective Order

Rule 26(c) provides authority for district courts to issue protective orders, upon the motion of a party or person from whom discovery is sought, if good cause is shown.[1] Subdivision (7) provides for a protective order for trade secrets, confidential research, development, or commercial information.

 In order to obtain a protective order, the person must demonstrate good cause. *See generally* 8 Wright & Miller, *Federal Practice and Procedure* § 2035, at 264 (1970). The burden of showing good cause rests with the party requesting the protective order. The party must make a particular request and a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one. *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); and *Deines v. Vermeer Mfg. Co.*, 133 F.R.D. 46, 48 (D.Kan.1990). This requirement furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts. Such demonstrations are preferably made by affidavits from knowledgeable persons

---

1. Fed.R.Civ.P. 26(c):

**Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

and may include *in camera* submissions or *in camera* proceedings attended by opposing counsel. *Reliance Ins. Co. v. Barron's,* 428 F.Supp. 200 (S.D.N.Y.1977); and *In re Halkin,* 598 F.2d 176, 194 (D.C.Cir. 1979).

Even though the express language of Rule 26(c) does not set out time limits within which a motion for a protective order must be made, there is an implicit requirement that the motion must be timely, or seasonable, to borrow the term used prior to the amendment of the Federal Rules of Civil Procedure in 1970. *See* Rule 30(b), *Rules of Civil Procedure,* 48 F.R.D. 487, 510 (1970). Prior to the 1970 Amendments, protective order provisions were found in old Rule 30(b) which only pertained to oral depositions.[2] 8 Wright & Miller, *Federal Practice and Procedure* § 2035. The prior rule required that an application for a protective order be made "seasonably" or "promptly." *Id.* at 262, and *Rules,* 48 F.R.D. at 510, and *see* n. 2, *infra.* The 1970 Amendments took the protective order provisions out of old Rule 30(b) and placed them in Rule 26(c). Fed.R. Civ.P. 26(c) now applies to all discovery, including written discovery such as interrogatories, requests for the production of documents and requests for admissions and not just depositions. Even though the new Rule 26(c) does not contain a provision of timeliness, that requirement remains an implicit condition for obtaining a protective order. *Id.* at 262; *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.,* 129 F.R.D. 483, 487 (D.N.J.1990). The failure to timely move for a protective order constitutes grounds for denying the same. *Nestle, supra.*

A motion for a protective order is timely if made prior to the date set for producing the discovery. *In re Coordinated Pretrial Proceedings, etc.,* 669 F.2d 620, 622 n. 2 (10th Cir.1982) (motion made four days prior to date set for production); *In re Air Crash Disaster at Detroit Metro. Airport,* 130 F.R.D. 627, 630 (E.D.Mich. 1989). In determining timeliness, a court should consider all of the circumstances facing the parties. 8 Wright & Miller, *Federal Practice and Procedure* § 2035, at 262–63. Thus, a failure to request a protective order prior to the time set for producing the discovery may be excused for good cause, such as lack of sufficient time or opportunity to obtain the order. *Id.*

Defendant argues, that for written discovery, it is sufficient that it note its objections within the time permitted,[3] and that it should not have to move for a protective order until after the plaintiffs move to compel the discovery. Nothing in Rule 26(c) suggests that there should be such a dichotomy between oral depositions and written discovery. The procedure turns the normal state of obligations on its head. The party seeking the protective order, who has the burden of requesting and supporting it, should also be responsible for initiating the process. Permitting that party to merely note its objections and then sit back and wait for a motion to compel can only serve to prolong and exacerbate discovery disputes.

The obligation to timely move for a protective order applies equally to written discovery as to protective orders for oral depositions. *United States v. International Business Machines,* 70 F.R.D. 700 (S.D. N.Y.1976); *U.S. v. Intern. Business Machines Corp.,* 79 F.R.D. 412 (S.D.N.Y.1978) (protective order untimely when first made in argument on request to reconsider order compelling production). Thus in *Wang v. HSU,* 919 F.2d 130 (10th Cir.1990), the court affirmed the denial of an untimely motion for a protective order which was not filed, nor any objection made, within the period required (ten days after service

---

**2.** Old Fed.R.Civ.P. 31(d), which covered depositions upon written questions, made the protective order provisions of old Rule 30(b) applicable to written depositions if the motion was "promptly made" and prior to the taking of testimony. *See* Rule 31(d), *Rules of Civil Procedure,* 48 F.R.D. 487, 517 (1970).

**3.** Written discovery provides a party thirty days within which to file a response. *See* Fed.R. Civ.P. 33(a), 34(b), and 36(a). For a subpoena *duces tecum,* an objection must be filed within ten days of service or prior to the deposition. Fed.R.Civ.P. 45(d)(1).

or prior to the deposition) for a subpoena *duces tecum* by Fed.R.Civ.P. 45(d)(1). And, in *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 73 n. 5 (M.D.N.C.1986), a party resisted a subpoena *duces tecum* and filed an objection within ten days or prior to the deposition as required by Fed.R.Civ.P. 45(d)(1). However, it failed to formally move for a protective order for either the deposition or the document request, even after a motion to compel had been filed. The Court, in dicta, held, citing Rule 26(c) and noting the untimeliness, that any objection to producing the discovery based on grounds that it involves a trade secret or confidential trade information, would be denied.

It is not unfair to apply the implicit requirement of timeliness in Fed.R.Civ.P. 26(c), that a motion for a protective order be made prior to the date set for the discovery, to both oral depositions and to written discovery. *United States v. International Business Machines, supra; U.S. v. Intern. Business Machines Corp., supra.* This is true even though written discovery, unlike oral depositions, provides for a written response, where an objection can be made if the information is privileged, confidential or secret. Therefore, defendant's motion for a protective order is untimely unless it can establish good cause to excuse the untimeliness.

■ The Court finds good cause to excuse defendant's otherwise untimely request for a protective order covering written discovery because defendant sought in good faith to negotiate a consent protective order. In such a situation, a party establishes its good faith by showing that it specifically noted the objection and need for a protective order in its response to written discovery and submitted a proposed consent protective order to the opposing party.[4] If the parties cannot agree on a protective order, then within a reasonable time, the party desiring the protective order must file a motion requesting one. Absent extraordinary circumstances, the outside limit, within which a motion for a protective order for written discovery may be made, is the time set for the response to a motion to compel the written discovery. *Byrnes v. Jetnet Corp., supra.* Even then, costs and expenses may be assessed for the delay and extra expense caused by dilatory action.

■ In the instant case, defendant failed to move for a protective order to plaintiffs' written discovery requests within the time which it was required to respond. Nor did it submit a proposed protective order along with its response. However, defendant (1) noted its objections in the response to the written discovery, (2) submitted a proposed protective order prior to plaintiffs' motion to compel discovery, and (3) moved for a protective order in response to plaintiffs' motion to compel. These facts demonstrate defendant acted in good faith.[5] Considering all of the facts and circumstances in this case, including the unsettled state of the law, the Court finds defendant's request for a protective order is seasonable

---

**4.** This procedure has much to commend it. Were the Court, in every case, to insist on a motion for a protective order at the same time a response is made to written discovery, the Court could be embroiled in a large number of discovery disputes that the parties could resolve among themselves by the procedure employed by defendant in this case. Indeed, in large and complex litigation, the procedure employed by defendant in seeking a blanket, consent protective order is quite common and acceptable. *See Parkway Gallery Furniture v. Kittinger/PA. House,* 121 F.R.D. 264 (M.D.N.C.1988).

**5.** In so ruling, the Court rejects plaintiffs' contention that defendant acted in bad faith by insisting on a consent protective order which requires plaintiffs' counsel to seek permission to show the documents to plaintiffs or their witnesses. Plaintiffs insist this would be tantamount to permitting defendant to control the litigation and plaintiffs' discovery. Many courts have limited confidential trade information to counsel and expert witnesses. *Georgia Television v. TV News Clips of Atlanta,* 718 F.Supp. 939 (N.D.Ga.1989); *Triangle Ink and Color Co., Inc. v. Sherwin–Williams Co.,* 61 F.R.D. 634 (N.D.Ill.1974); *Maritime Cinema Service Corp. v. Movies En Route, Inc.,* 60 F.R.D. 587 (S.D.N.Y. 1973); *Spartanics, Ltd. v. Dynetics Engineering Corporation,* 54 F.R.D. 524 (N.D.Ill.1972). The Court does not view such a provision as permitting one party to control the discovery of another party. Rather, the Court sees the function of defendant's review as acting as a buffer for the Court which can often prevent needless Court involvement.

and not beyond the outside limits for making such a request. However, the Court has adjusted the costs and expenses to take into account and sanction defendant's dilatory action in requesting a protective order.

## II.

### *Defendant's Motion for a Protective Order*

 The final matter to be resolved is whether defendant Stroh should be granted a protective order pursuant to Fed. R.Civ.P. 26(c)(7) for the allegedly confidential material sought by plaintiffs. In order to obtain a protective order for confidential material, a party must show: (1) that the material is treated confidentially; and (2) that there is a need for the protective order and the harm which will occur without one. If this is satisfied, the party opposing the protective order must show the relevance of the material to the case and the necessity for disclosure. *Byrnes v. Jetnet Corp.,* 111 F.R.D. at 73; *Georgia Television v. TV News Clips of Atlanta,* 718 F.Supp. 939, 953 (N.D.Ga.1989); *Duracell Inc. v. SW Consultants, Inc.,* 126 F.R.D. 576, 578 (N.D.Ga.1989). Other general factors applicable to all protective orders are: the danger of abuse if a protective order is granted, the good faith of the various parties' positions, the adequacy of the protective measures provided by a protective order, and the availability of other means of proof. 8 Wright & Miller, *Federal Practice and Procedure* § 2043, at 302 (1970), citing Advisory Committee Notes on Rules of Evidence.

 In determining whether the material is confidential, the Court must look at the nature of the information, the measures taken to protect its secrecy, and the extent of knowledge of the information by both outsiders and insiders. *Reliance Ins. Co. v. Barron's,* 428 F.Supp. at 203. In the instant case, defendant shows that the information is not shared with anyone outside of the corporation and is only provided to those inside the corporation on a "need

to know" basis. The Court finds that defendant has made a *prima facie* showing of confidentiality.

 Next, defendant must show the need for the protective order and the harm resulting without one. This factor involves the value of the information to the business and its competitors. *Id.* Subsidiary factors include the age of the document, *Nestle Food Corp. v. Aetna Cas. and Sur. Co.,* 129 F.R.D. 483, 485, and its value to competitors in conjunction with the vulnerability of the disclosing corporation. *Duracell Inc. v. SW Consultants, Inc.,* 126 F.R.D. at 579. For instance, the fact that the disclosing corporation may be small and vulnerable to going out of business can be an important consideration.

In the instant case, defendant shows the information is both valuable and could cause harm if it is released. The information involves marketing strategies and financial information about its distributors. Rule 26(c)(7) protects more than patents, trade secrets or customer lists, as suggested by plaintiffs. Confidential or commercial information includes market strategy and financial information of suppliers or distributors. *Duracell Inc. v. SW Consultants, Inc.,* 126 F.R.D. at 578–79. Such commercial information, which encompasses strategies, techniques, goals and plans, can be the lifeblood of a business. *Id.* This type of financial information may also be particularly deserving of protection if the disclosing corporation is vulnerable to competitors. *Id.*

Defendant shows that it is a small corporation in the malt distribution business and is suffering a declining market share. Defendant has also made a significant showing that the first set of documents, which involve marketing strategy, meet Rule 26(c)(7) confidentiality requirements.[6] The second set of documents, which involve control changes, has less value to competitors. However, it does involve sensitive financial information given by the distribu-

---

**6.** This finding of confidentiality does not pertain to pp. 1–10 of the *in camera* documents which merely set out the procedures for request-

ing change of control approval from defendant Stroh. Defendant fails to show a need to keep the procedures confidential.

tors in confidence. There is a legitimate business need for the confidence and so this information is also entitled to some degree of protection.

The only question the Court has is whether the age of the information significantly weakens defendant's showing of need and harm. This matter was addressed at the hearing. The documents which discuss the distributors and defendant's market strategy do not go beyond the year 1988. Defendant could not show that age did not diminish the importance of the documents. At best, defendant is left to argue a theory of general or residual harm whenever past strategy is released because it can serve to confirm the intelligence observations and conclusions of the competitors, and help them in that manner. Also, the information as to some distributors, although dated, still reflects current thinking. Thus, the age of the documents diminish, but do not entirely eliminate, the need to keep them confidential.

The change of control documents, on the other hand, do involve current documents. The documents are sensitive and should be kept from the general public. However, as to plaintiffs, they are only sensitive to the extent the plaintiffs are active distributors. One or more of the plaintiffs are no longer distributors. For the reasons cited above, defendant agreed at the hearing that plaintiff Brittain could be shown both sets of the confidential documents.

The Court also concludes that one of the two known active distributors (Dean or Ted Proctor) should be allowed to see both the distributor and market strategy documents and the control change documents. Plaintiffs demonstrated that it would be a great imposition for counsel to review the documents alone and a significant expense to do so with an expert witness. The Proctors understand the business and can interpret the documents. Defendant has failed to show sufficient good cause and need for confidentiality to withhold the control change documents from all active distributors, when such persons have the ability to be of special assistance to counsel. As will be discussed next, it is determined, in light of the high degree of relevancy, that disclosing the dated strategy documents and the current control change documents to one active distributor plaintiff and the non-distributor plaintiffs, under a protective order, grants sufficient protection to the documents, for the level of confidential need established by defendant.

Because defendant has shown need for some level of a protective order, plaintiffs have the burden of showing the relevance of the material. When the material sought involves matters which go to the heart of the case, it is likely that some type of disclosure must be expected. *Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587 (S.D.N.Y.1973) (commercial information in antitrust case); *Spartanics, Ltd. v. Dynetics Engineering Corporation*, 54 F.R.D. 524 (N.D.Ill.1972). *But see Carpenter Technology Corp. v. Armco, Inc.*, 132 F.R.D. 24, 26 (E.D.Pa. 1990) (some, even highly relevant, information might be kept from direct competitors). In the instant case, plaintiffs have shown that the information involving change of control procedures and decisions involves the cornerstone their complaint. Therefore, some form of disclosure of the information is mandated.

In the present case, defendant has shown a need for some type of protective order. On the other hand, plaintiffs have shown the need for some type of access to the information. Because of the age of the information and the inconvenience and expense to deny plaintiffs reasonable access, the Court finds that defendant is entitled to a general protective order but that the non-distributor plaintiffs and one active plaintiff should be allowed access to the documents under a protective order. Such an order appears feasible without risk of either side being abused thereby. The Court finds the position of both sides to be made in good faith. The above proposed protective order would appear to provide adequate protection so as not to be an exercise in futility. The information has not been demonstrated to be sufficiently sensitive to require limitation to counsel and experts alone. Thus, permitting some plaintiffs access to the information does

not destroy the adequacy of the protective order. Finally, while plaintiffs have not shown that they are the only ones qualified to interpret the information, *see Wang Laboratories, Inc. v. CFR Associates, Inc.,* 125 F.R.D. 10 (D.Mass.1989), defendant has not shown that the protective order will likely only be effective if plaintiffs not be given access to the information.

IT IS THEREFORE ORDERED that defendant's and plaintiffs' respective motions to compel discovery are granted and any remaining outstanding discovery shall be provided forthwith as discussed in the body of this Order.

IT IS FURTHER ORDERED that defendant's motion for a protective order pursuant to Fed.R.Civ.P. 26(c)(7) is granted and the distributor strategy documents filed *in camera* (except pp. 1–10) and the control change documents shall only be shown to plaintiffs' counsel and authorized staff, plaintiffs' expert witnesses who shall first be identified to defendant, and plaintiff Brittain and either plaintiff Dean or Ted Proctor, but no other plaintiff or witness except by permission of defendant or on further order of the Court. Said person to whom the documents are disclosed shall use the information solely for the purposes of this case and for no other purpose or benefit and not disclose the information to any other person. Persons other than counsel may be required to sign an affidavit acknowledging their obligations. Depositions discussing this information shall be restricted and sealed under the terms of this Order. If the information is sought to be used in briefs or motions, the parties will attempt to devise a means for coding the information to eliminate the need to request that the entire document be filed under seal. At the conclusion of this litigation, the copies of the documents shall be returned to defendant. Any other witness for plaintiffs or any plaintiff seeking to establish access to the information as a non-distributor shall first seek permission from defendant.

IT IS FURTHER ORDERED that each side shall bear its own costs and expenses

for obtaining the order and defending the motions decided herein.