CYTODYNE TECHNOLOGIES,
INC., Plaintiff,

v.

BIOGENIC TECHNOLOGIES,
INC., et al, Defendants.

No. 3:03–MC–4–J–TEM.

United States District Court,
M.D. Florida,
Jacksonville Division.

June 4, 2003.

Molloy J. Brian, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for plaintiff.

HeatherAnn Marie Solanka, Foley & Lardner, Jacksonville, FL, Michael A. Bow-

---

en, Foley & Lardner, Milwaukee, WI, Michael A. Lampert, Saul Ewing LLP, Princeton, NJ, for defendants.

### ORDER

MORRIS, United States Magistrate Judge.

This case came before the Court on April 30, 2003 for a hearing on Defendant Super Natural Distributors, Inc.'s Motion for Order Compelling Compliance with Subpoena (Doc. # 1, Motion to Compel), Non-party Tree of Life's Response to Motion for Order Compelling Compliance with Subpoena and Cross–Motion to Quash with Incorporated Memorandum of Law (Doc. # 5, Motion to Quash) and Super Natural Distributors, Inc.'s Motion to Expedite Ruling on Motion for Order Compelling Compliance with Subpoena (Doc # 6, Motion to Expedite). All counsel of record known to this Court were notified of the motion hearing. Only counsel for Defendant Super Natural Distributors Inc. and non-party Tree of Life attended the hearing. Oral argument was heard from counsel present at the hearing.

Super Natural Distributors, Inc. ("Super Natural") is a named defendant in the lawsuit currently pending in the United States District Court for the District of New Jersey that underlies this miscellaneous case. Cytodyne Technologies, Inc. is the plaintiff in the New Jersey action. On September 5, 2002, Super Natural issued a subpoena to non-party Tree of Life for a "designated witness" deposition and production of records wherein numerous records concerning Tree of Life's business in general and business dealings with Cytodyne Technologies, Inc. in particular were requested. (*See* Doc. # 5, Ex. D for copy of subpoena.[1]) This request for third

party discovery arose out of Super Natural's counterclaim for price discrimination against Plaintiff Cytodyne Technologies (Doc. # 1 at 1). Tree of Life objects to the subpoena on the grounds it seeks trade secret and proprietary information that if disclosed would give Defendant Super Natural[2] a competitive advantage and that Defendant has failed to meet its burden establishing that the information sought is relevant and necessary to its lawsuit (Doc. # 5, pp. 6–17). Both parties acknowledge that Tree of Life, Inc. and Super Natural Distributors, Inc. are competitors in the marketplace (Doc. # 2 at 3; Doc. # 5 at 3).

The subpoena at issue called for the production of documents in Milwaukee, Wisconsin[3] on September 12, 2002 and the appearance of a corporate representative in Jacksonville, Florida for a deposition on September 16, 2002 (Doc. # 2, p. 3). The subpoena seeks deposition testimony on the following subjects:

1. The relationship between Tree of Life, Inc. d/b/a Forcite/The Source ("Forcite") and Cytodyne Technologies, Inc. ("Cytodyne") including, without limitation, the prices Cytodyne charge Forcite for products manufactured by or on behalf of Cytodyne ("Cytodyne Products"), the quantity of Cytodyne Products Forcite purchased from Cytodyne, and other terms of sale.

2. Any departure from the standard prices or terms of sale offered to Forcite by Cytodyne in connection with transactions involving or relating to Forcite's purchase of Cytodyne Products from Cytodyne.

3. Arrangements and agreements between Forcite and Cytodyne concerning prices and terms of sale.

---

**1.** The Court notes that Defendant failed to attach any supporting documents with its Motion to Compel. However, the Court finds a copy of the subpoena attached to Tree of Life's Motion to Quash (Doc. # 5, Ex. D).

**2.** All references to "defendant" in this Order shall pertain solely to Defendant Super Natural Distributors, Inc.

**3.** It is the Court's understanding that prior to the motion hearing, the parties agreed with each other to await the Court's ruling before attempt-

ing enforcement of the subpoena. The parties informed the Court during the April 30, 2003 hearing that they had earlier agreed to produce documents, if so ordered, at mutually convenient location. Thus, the location of any required production of documents is no longer an issue for the Court's consideration.

The record of the April 30, 2003 hearing is hereby incorporated by reference. The non-transcribed recording of said hearing may be obtained by contacting the Courtroom Deputy of the undersigned.

4. Rebates, credits, premiums, free product, or any other type of price reduction or discount that Cytodyne offered and/or provided to Forcite in connection with transactions involving or relating to Forcite's purchase of Cytodyne Products from Cytodyne.

5. The terms of sale, including the price and quantity of product, for Cytodyne Products sold by Forcite to its customers during the time period October 1998 to March 2001.

6. Forcite's policies and practices concerning resale pricing on Cytodyne Products and any variations in such pricing.

7. The geographic areas in which, and the classes of trade to which, Forcite resold Cytodyne Products.

8. Oral and written communications between Forcite and Cytodyne concerning pricing and resale pricing during the period from January 1998 through December 2000.

(Doc. # 1, p. 2; Doc. # 5, Ex. D, Subpoena, Schedule A.)

Super Natural seeks documents for inspection and copying concerning:

1. Invoices, credit memos, and corresponding payment records, including, but not limited to checks, wire transfers and/or rebates vouchers, reflecting or relating to the sale of Cytodyne Products by Forcite to its customers for the time period October 1998 to March 2001.

2. Invoices, credit memos, and corresponding payment records, including, but not limited to checks, wire transfers and/or rebates vouchers, from Cytodyne to Forcite reflecting or relating to the purchase of Cytodyne Products by Forcite for the time period October 1998 to March 2001.

(Doc. # 1, p. 3; Doc. # 5, Ex. D, Subpoena Schedule B.)

### *Discussion*

■ Motions to compel disclosures and other discovery are committed to the sound discretion of the trial court. *Commercial Union Insurance Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir.1984). The scope of discovery under the Federal Rules is broad.

"Parties may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending action ...." FED. R. CIV. P. 26(b). The Supreme Court has held that discovery is designed to help define and clarify the issues. *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ Although Rule 26(b) applies to discovery of non-parties as well as parties in a suit, non-party status is considered by the court in weighing the burdens imposed in providing the requested discovery. *See American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 (Fed.Cir.1987) (affirming district court's restriction of discovery where non-party status "weigh[ed] against disclosure"); *American Electric Power Company, Inc. v. United States*, 191 F.R.D. 132, 136 (S.D.Oh. 1999) (status as a non-party is a factor that weighs against disclosure); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y.1988) (non-party status is a significant factor in determining whether discovery is unduly burdensome). The limited case law in this area reveals a case-specific balancing test wherein the court must weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information. *Farnsworth v. Procter & Gamble Company*, 758 F.2d 1545 (11th Cir.1985); *American Electric Power Company, Inc. v. United States*, 191 F.R.D. 132 (S.D.Oh.1999). Further, the courts have acknowledged that disclosure of confidential information to a competitor is presumed to be harmful to the disclosing entity. *See American Standard, Inc.*, 828 F.2d at 741 and cases cited therein.

■ In the instant case, Tree of Life avers that the information requested by Super Natural contains trade secrets, and is otherwise confidential and proprietary. Florida law controls what is a "trade secret" in this case. Trade secrets are defined by Florida statute as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

FLA. STAT. § 688.002(4) (2002). Florida courts have held that the term "trade secrets" includes active customer lists. *Sethscot Collection v. Drbul,* 669 So.2d 1076 (Fla. 3d DCA 1996). Tree of Life professes that its "stock-in-trade is its customer list and the relationships maintained with those customers" (Doc # 5, p. 6). Accordingly, the Court finds that the information requested in Schedule A, numbers 5–7 and Schedule B, number 1 of the contested subpoena are protected from disclosure as "trade secrets" under Fla. Stat. § 688.002(4).

Once Tree of Life has shown the requested discovery to be trade secrets, Tree of Life must then demonstrate that disclosure might be harmful. *R & D Business Sys. v. Xerox Corp.,* 152 F.R.D. 195 (D.Colo.1993). As noted above, courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor. *See, e.g., Coca–Cola Bottling Co. v. Coca–Cola Co.,* 107 F.R.D. 288 (D.Del.1985); *United States v. United Fruit Co.,* 410 F.2d 553, 557 (5th Cir.1969) (holding that a company would be harmed by disclosure of financial and marketing data to competitors). This Court finds that since Tree of Life and the Defendant are competitors, Tree of Life has made the required showing that the discovery requested in Subpoena Schedule A, numbers 5–7 and Subpoena Schedule B, number 1 are confidential and that their disclosure is potentially harmful.

The burden then shifts to the Defendant to show that this information is relevant and necessary in proving its counter-claim against the Plaintiff. *Duracell, Inc. v. SW Consultants, Inc.,* 126 F.R.D. 576 (N.D.Ga. 1989). Defendant avers that "the subpoena is intended to conduct discovery with respect to whether price reductions given to Tree of Life by Cytodyne were used to gain a com-petitive advantage over Super Natural, causing it economic loss and injury to competition generally." The Subpoena Schedule A, numbers 5–7 and Subpoena Schedule B, number 1 are more focused on the internal financial affairs and marketing strategies of Tree of Life than on the alleged price discrimination. The other information requested seems to be only that which could verify or negate discovery received from Plaintiff. Thus, the Court finds Defendant has failed to show a substantial need for the requested information and it would be unduly burdensome to require a non-party to produce the documents requested and/or to gather those documents which would be needed in preparation of deposition testimony covering the broad range of topics on which Defendant seeks information.

Determination of whether the need outweighs the harm falls within the sound discretion of the trial court. *See generally, Farnsworth,* 758 F.2d 1545; *Duracell,* 126 F.R.D. 576. The Court, in balancing the need of Defendant for the requested information against Tree of Life's interest in keeping the information from a competitor, finds that the harm to Tree of Life in disclosure outweighs, at this time, Defendant's need for the production of documents identified in Schedule B and the deposition testimony as outlined in Schedule A of the contested subpoena.

Defendant asserts that the instant case is "nearly identical" to the Tenth Circuit case of *Covey Oil Co. v. Continental Oil Co.* (Doc. # 2 at 8). *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993 (10th Cir.1965). In *Covey Oil Co.,* the Tenth Circuit concluded that the interests of justice required the enforcement of a subpoena in which the subpoenaed non-party claimed trade secrets relating to price, cost, and volume of sales of gasoline rather than processes, formulas, or methods. *Id.* To protect the subpoenaed party, the court imposed conditions designed to protect the subpoenaed party. These conditions included, among others, forbidding the use of the material for business or competitive purposes, limiting the disclosure of documents to counsel and only for purposes of the litigation, limiting the right to presence at the depositions, and ordering that documents

and depositions to be held by the clerk under seal. *Id.* at 999.

The instant case is distinguishable from *Covey* on several key points. For example, the defendant in *Covey* submitted proof that it was losing its market position. *Id.* at 997. In the instant case, Defendant made an allegation of lost of market share in its counterclaim against Plaintiff, but has not submitted any proof of that loss, or even alleged that market share was lost to Tree of Life (*see* Doc. # 5, Ex. C, pp. 18–19). In *Covey,* the defendant issuing the non-party subpoenas was seeking to defend allegations of price fixing and price discrimination under the Sherman Act and the Robinson–Patman Act. *Covey,* 340 F.2d at 993. In the instant action, Defendant Super Natural raised a counter-claim against Plaintiff alleging Plaintiff violated of the Robinson–Patman Act; Super Natural now seeks to substantiate the allegations raised in the counter-claim. The defendant in *Covey* demonstrated a great need for the discovery request and the court found the information sought was "vital to the defenses asserted." *Id.* at 998. In this case, Defendant is seeking to "confirm the nature and volume of price discounts," but has not demonstrated any great need for the information requested directly from Tree of Life. In fact, during the April 30 hearing, Defendant's counsel was unable to support a need for *any* of the requested information, other than to perhaps verify discovery received from Plaintiff.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion to Compel (Doc. # 1) is **DENIED** without prejudice to an amended subpoena that is limited to requesting deposition testimony from a Tree of Life representative who can verify or deny the validity of discovery received from Plaintiff.[4]

2. Tree of Life's Motion to Quash (Doc. # 5) is **GRANTED**.

3. Defendant's Motion to Expedite (Doc. # 6) is **GRANTED**.

---

4. The Court notes the counsel present at the April 30 hearing were amenable to such a deposition.