**In re INDEPENDENT SERVICE ORGANIZATIONS ANTITRUST LITIGATION.**

**This Document Applies To CSU Holdings, Inc., et al. v. Xerox.**

**Civ. A. No. MDL–1021.**

United States District Court, D. Kansas.

June 30, 1995.

Eric D. Braverman, Employers Reinsurance Corp., Overland Park, KS, P. John Owen, Lori R. Schultz, Kansas City, MO, Michael C. Manning, Morrison & Hecker, Phoenix, AZ, for CSU Holdings Inc., Copier Services Unlimited, Inc., Copier Services Unlimited of St. Louis, Inc.

James A. Hennefer, San Francisco, CA, for Acquisition Specialists, Inc., Tecspec, Inc., Consolidated Photo Copy, Inc., Copier Rebuild Center, Inc., CPO Ltd., Gradwell Co., Inc., Graphic Corp. of Alabama, International Business Equipment, Inc., Laser Resources Inc., Laser Resources of Minnesota, Inc., Laser Solutions, Inc., Laser Support and Engineering, Inc., Marathon Copier Service, Inc., Nationwide Technologies, Inc., Reprographics Resources Systems, Inc., Resources Systems, Inc., Suntone Industries, Inc., Technical Duplication Services, Inc., X–Tech Systems Inc., Xer–Dox Inc., Xerographic Copies Services, Inc.

James A. Hennefer, San Francisco, CA, Jack M. Bernard, Philadelphia, PA, for Creative Copier Services, Inc.

Peter K. Bleakley, Arnold & Porter, Washington, DC, Peter W. Marshall, Xerox Corp., Stamford, CT, Michael G. Norris, Norris, Keplinger & Logan, L.L.C., Overland Park, KS, C. Larry O'Rourke, E. Robert Yoches, Vincent P. Kovalick, Leslie I. Bookoff, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for Xerox Corp.

*MEMORANDUM AND ORDER*

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of the Copier Services Unlimited ("CSU") plaintiffs for a supplemental protective order (Doc. # 42) and the related motion of defendant Xerox to compel discovery (Doc.

# 49). For the reasons set forth below, CSU's motion will be granted and Xerox' motion will be denied.

Central to CSU's antitrust claims in the instant action are CSU's allegations that Xerox illegally restricted access to replacement parts for Xerox equipment. Specifically, CSU claims Xerox implemented a parts policy that made it difficult for CSU and foreclosed CSU from access to the principal source of parts, i.e., Xerox. CSU claims that it was forced to rely on "limited and uncertain sources of captive parts" which were "inadequate, inefficient, and costly." Notwithstanding that availability of parts is a central issue in CSU's claims, CSU now seeks to withhold the identities of twelve of its parts suppliers ("the confidential suppliers").

A protective order is presently in force (Doc. # 37). Prior to its entry, the Acquisition Specialist plaintiffs sought to modify the present protective order to exclude access by Xerox in-house counsel to *all* highly confidential information. Information about ISO parts sources is considered highly confidential information. Under the competitive decision-making test set forth in *United States Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed.Cir.1984), the court denied the request of the Acquisition Specialist plaintiffs for a blanket restriction on access by Xerox in-house counsel to all highly confidential information because the court held that the protective order provided adequate protection. *In re Independent Service Organizations Antitrust Litigation,* No. MDL–1021, 1995 WL 151739, at *1–2 (D.Kan. March 9, 1995). A key factor in the court's decision was Xerox' past history of compliance with the protective order in the *R & D* case. *Id.* In addition, the court's decision was driven by considerations about unfairly hampering Xerox' ability to properly defend itself by denying Xerox in-house counsel access to all highly confidential information in the case. *Id.* at *1.

■ In entering the present protective order, the court did not, however, reach the question of whether certain types of critical highly confidential information could be protected. CSU now seeks to protect, as trade secrets, the identities of twelve confidential suppliers. "There is no absolute privilege for trade secrets and similar confidential information." *Centurion Indus., Inc. v. Warren Steurer & Assocs.,* 665 F.2d 323, 325 (10th Cir.1981). Rather, we must balance Xerox' need for the trade secrets against CSU's claim of injury which might result from disclosure. *See id.*

■ We analyze controversies involving the disclosure of trade secrets as follows:

To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret ... and then demonstrate that its disclosure might be harmful.... If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action.

*Id.* Absent a showing of relevancy and need, disclosure should not be required. *Id.* However, if relevancy and sufficient need are established, the trade secrets should generally be disclosed, unless "they are privileged, or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Id.*

■ CSU asserts that it obtains its parts from legitimate sources, which fall into the following categories: 1) Xerox and Xerox affiliates, including overseas affiliates; 2) third party manufacturers; 3) end users; 4) independent agents, brokers, and distributors in foreign countries; and 5) stripping parts from machines which are no longer in service. The twelve confidential suppliers are in the fourth category, i.e., independent agents, brokers, and distributors.

CSU contends that it does not obtain parts by theft and it does not buy stolen parts from Xerox employees. Rather, according to CSU, foreign subsidiaries of Xerox rely on a network of independent agents, brokers, and dealers to distribute and service Xerox high volume copiers. Xerox willingly sells parts to this intermediary network of companies for resale to Xerox subsidiaries. Paul T. Lyons, CSU's Chief Executive Officer, affies that the intermediaries then legally sell, either directly or indirectly, to CSU. Mr. Lyons asserts that, as independent compa-

nies, these sources are not restricted by Xerox' internal parts policies. He states that he is not aware of any legal or contractual prohibition on these companies selling parts to ISOs.

Although CSU purchases less than 10% of their total parts from these sources, CSU contends that their savings from these purchases are substantial. CSU maintains that without the cost savings represented by these parts sources, its profitability would be seriously impacted and it would have lost money every year since 1988.

CSU states that it seeks to withhold only the identities of the suppliers, but agrees to disclose all other non-identifying information relative to its purchases of parts from the confidential sources, including the part numbers, quantities, dates, prices and shipping costs of parts purchased. CSU has already produced actual parts invoices from which all identifying information of the source has been redacted.

CSU contends that no protective order can adequately protect against the substantial harm which could result from disclosure of the identities of the twelve confidential suppliers. CSU argues that the nature of CSU's relationship with these twelve suppliers is highly sensitive to detrimental action by Xerox if the identities of the suppliers are revealed. Under the present protective order, a large number of people, including Xerox inhouse legal staff and expert witnesses, would have access to the information about CSU's confidential parts sources. CSU argues that even inadvertent disclosure in violation of the protective order could be lethal to CSU because Xerox would use it to cut off CSU's source of supply and put it out of business.

CSU submits a wealth of internal Xerox documents which further its point. The documents show a concerted effort by Xerox to discover ISO parts sources and reveal somewhat extreme efforts by Xerox employees to discover the identities of parts sources, including searching trash and hiring an outside

security firm. Sources in the documents assess Xerox' expenditures on efforts to discover ISO parts sources at between $100,000 and $250,000. The documents are dated from 1988 through 1992. The documents indicate a desire by Xerox employees to eliminate CSU as a competitive threat by cutting its parts sources if discovered.

CSU maintains that if the identity of these twelve confidential suppliers is disclosed, Xerox will take actions to cut off CSU's access to parts from these sources. As an example, CSU points to Rank Xerox, an important parts source which was cut off when discovered by Xerox. From April 1988 through February 1990, Rank Xerox, a United Kingdom company (51% of which is owned by Xerox USA), supplied significant quantities of parts to CSU at prices approximately 50% less than the prices at which CSU could buy the parts in the United States. CSU asserts that Rank Xerox terminated its relationship with CSU due to pressure from Xerox USA. CSU does not claim that Xerox discovered CSU's relationship with Rank Xerox as a result of a violation of the protective order in the *R & D* case, but offers the Rank Xerox incident as an example of what Xerox will do with information about its parts sources.

Xerox does not quarrel with CSU's claim that the identity of the confidential suppliers are trade secrets.[1] Rather, Xerox maintains that, under the present protective order, there is no risk of harm from disclosure. Xerox argues that CSU's allegations regarding actions taken by Xerox to discover ISO parts sources simply show efforts by Xerox to protect its proprietary parts. Xerox maintains that any such actions are irrelevant to the question of whether the present protective order is adequate. Xerox contends that CSU has not shown potential harm from disclosure under the present protective order. Xerox offers its adherence to the *R & D* protective order as evidence that no additional protections are appropriate or necessary. In addition, Xerox points to certain documents it claims were inadvertently dis-

---

1. Under Kansas law, a trade secret has been described as, "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Southwestern Bell Tel. Co. v. State Corp. Comm'n*, 6 Kan.App.2d 444, 457, 629 P.2d 1174, 1184 (1981) (quoting *Koch Engineering Co. v. Faulconer*, 227 Kan. 813, 827, 610 P.2d 1094, 1104 (1980)).

closed by CSU which may reveal some of its confidential parts sources. As evidence of its good faith compliance with the present protective order, Xerox asserts that it has not taken any action to stop those sources from selling to CSU.

Xerox' past compliance with the *R & D* protective order does not convince the court that there is no potential risk of harm from disclosure of CSU's confidential parts sources in the instant litigation. Notably, the identities of CSU's confidential parts suppliers were never revealed under the *R & D* order—CSU was specifically excepted from the obligation to disclose the identity of its parts sources. Order at 1 (*R & D Business Systems, et. al. v. Xerox Corp.*, No. 2–92–CV–042 (E.D.Tx.)) (order entered after a hearing at which disclosure of CSU's confidential suppliers was given considerable attention). From the transcript of the hearing on the protective order in the *R & D* case, it appears that the court contemplated conducting an in camera inspection of CSU's parts source information to determine whether disclosure should be required. However, according to CSU, the case settled and the identities of its confidential parts sources were never revealed to Xerox in the *R & D* suit.

The court finds that CSU has established that the identities of its parts sources are trade secrets and that disclosure, even under the present protective order, might be harmful. *See Centurion,* 665 F.2d at 325. We acknowledge that CSU has not presented any evidence that Xerox has violated the protective order in this case or that it violated the protective order in the *R & D* case. Notwithstanding good faith efforts by Xerox to comply with the confidentiality mandates of the protective order, the court believes that CSU has demonstrated potential harm which could result from even inadvertent disclosure of its confidential suppliers.

Moreover, Xerox has not met its burden of showing sufficient need for disclosure of the identities of the confidential suppliers to counterbalance the potential harm from disclosure. *See id.* at 325–26. Xerox contends that the information is necessary for Xerox to properly defend against CSU's claims and

to prosecute its counterclaims. Specifically, Xerox asserts that discovery of the identity of CSU's confidential parts suppliers is necessary for Xerox to rebut claims by CSU that: 1) sources for parts were "inadequate, inefficient, and costly"; 2) CSU's planned expansion was impeded by limited access to parts; 3) Xerox has market power in the parts market; 4) Xerox has erected barriers to entry and expansion in the parts market. Xerox contends that the identity of the confidential suppliers is also essential to its ability to prove its patent infringement counterclaims.

On the present record, it appears that disclosure of all information regarding the parts obtained from the confidential suppliers, except the identities of the confidential suppliers, will provide Xerox with the information necessary to rebut CSU's claims. Close examination of Xerox' arguments as to need reveal primarily supposition, rather than a particularized showing of substantial need. Especially in light of CSU's disclosure of all other information related to its parts sources, Xerox' present showing of need is inadequate. Xerox has not demonstrated that the *identities* of the twelve confidential parts sources will provide any necessary or essential additional component to Xerox' defense to plaintiffs' claims. Similarly, unless Xerox can make a particularized showing that the sale from a source likely infringes a patent, Xerox' need to prosecute its patent infringement counterclaims does not establish sufficient need to require CSU to disclose the identities of its confidential suppliers.

Xerox complains that CSU has refused to answer any questions related to parts sources on the pretense that they might be tangentially related to the identity of a confidential supplier. This approach is simply unacceptable. CSU will not be permitted to parlay its request for protection of the identities of its confidential suppliers into authorization for categorical refusals to answer relevant questions. One particularly relevant area appears to be the sources from which CSU did not purchase parts. CSU is forewarned that if it becomes apparent that protection of the identity of its confidential sup-

pliers cannot, as a practical matter, be afforded without thwarting Xerox' right to discovery, the court will direct CSU to reveal the identities of their confidential suppliers.

IT IS THEREFORE ORDERED that CSU's motion for a supplemental protective order (Doc. # 42) is granted.

IT IS FURTHER ORDERED that Xerox' motion to compel (Doc. # 49) is denied.