**DREXEL HERITAGE FURNISHINGS, INC., Henredon Furniture Industries, Inc., Lexington Furniture Industries, Inc., and Universal Furniture Limited, Plaintiffs,**

**v.**

**FURNITURE USA, INC., Dean Warren U.M. Marketing Group, Inc., and Val Apple, Defendants.**

**No. 1:00CV00345.**

United States District Court, M.D. North Carolina.

April 18, 2001.

Robert James King, III, Brooks Pierce McLendon Humphrey & Leonard, Greensboro, NC, for Drexel Heritage Furnishings Inc., Henredon Furniture Industries, Inc., Lexington Furniture Industries, Inc., Universal Furniture Limited.

W. Thad Adams, III, W. Thad Adams, III, P.A., J. Derel Monteith, Jr., Adams Law Firm, P.A., Charlotte, NC, for Furniture USA, Inc., Dean Warren.

Derel Monteith, Jr., Adams Law Firm, P.A., Charlotte, NC, for U.M. Marketing Group, Inc. and Val Apple.

### *ORDER*

ELIASON, United States Magistrate Judge.

This matter comes before the Court on defendants' motion for a protective order[1] and on plaintiffs' motion to compel discovery responses to interrogatory nos. 3, 4, 5, 9, 10, and 11, and document request nos. 1, 2, 3, 6, 7, 9, and 10. Plaintiffs then filed a separate response stating that they oppose a protective order because there has not been any showing that the information is confidential and second, granting the protective order would impair prosecution of plaintiffs' claims.

As background, plaintiffs are home furnishing manufacturers. They brought suit against defendants, who are furniture retailers, alleging that defendants misrepresented to their customers that the furniture came directly from plaintiffs. Because plaintiffs only sell to authorized representatives, they claim defendants' assertion is false and suspect that defendants may be selling counterfeit furniture and damaging plaintiffs' trademarks and reputation. Defendants filed a counterclaim alleging unfair trade practice and interference with their suppliers. It may be that some of plaintiffs' authorized distributors may be covertly selling to defendants on terms not acceptable to plaintiffs. Defendants maintain that plaintiffs want to identify defendants' suppliers in order to punish or terminate them.

### *A. Motion to Compel*

The Court will first deal with the motion to compel. Plaintiff groups the discovery into five categories: (1) information relating to defendants' advertising, marketing or sale of any product supposedly manufactured by plaintiffs' LifeStyle Companies or which bear such trademarks (interrogatory nos. 4, 5, 11; document request no. 4); (2) information regarding defendants' purchase of products, supposedly attributed to plaintiffs or their companies and which bear said trademarks (interrogatory no. 3; document request no. 3); (3) information or documents relating to warranties and inspection, and repair or replacement, of products, and customer complaints (interrogatory nos. 9, 10; document request nos. 9, 10); (4) documents referring to any of plaintiffs' companies or their trademarks (document request nos. 1 and 2); and (5) defendants' financial statements (document request no. 6).

Defendants' first response is to argue that plaintiffs' claims have no merit. However, this is not the kind of argument that the Court can adequately entertain in a discovery dispute. Defendants should have filed a motion to dismiss. Defendants next urge the Court to deny the motion to compel because plaintiffs are seeking confidential information, particularly in relation to defendants' suppliers and prices charged to customers. That argument fails to show that the information is not relevant and should not be produced. Consequently, the motion to compel will be granted in its entirety, as it appears that plaintiffs are seeking information relevant to a claim or defense. Fed. R.Civ.P. 26(b)(1) (2000). This leaves the

1. Accompanying the motion, defendants submitted a "Stipulated Protective Order" covering self-designated, "highly sensitive" commercial information for the Court's signature. The Court was led to believe that all parties accepted the agreement and the Court signed the same. However, plaintiffs informed the Court that they did not consent to the protective order. Therefore, the protective order was vacated.

Court with defendants' motion for a protective order.

### B. Motion for a Protective Order

In their motion for a protective order, defendants argue that if plaintiffs get defendants' supplier lists and other confidential information,[2] plaintiffs will use it to harm defendants. Here, defendants do not ask the Court to preclude plaintiffs from accessing defendants' supplier lists, but merely want the Court to limit access to plaintiffs' outside counsel. Plaintiffs, on the other hand, maintain that defendants have failed to follow the proper procedure for obtaining a protective order and have failed to show that the information is, indeed, confidential and deserving of any protection. Plaintiffs assert that defendants have waived any claim of confidentiality by failing to object to the discovery in their discovery responses by asserting confidentiality. Defendants respond that because they have been and are willing to provide the documents to outside counsel, they did not need to make specific confidentiality objections in their responses to the discovery requests.

### B(1) Waiver of Confidentiality Objections

Defendants err in contending that the Federal Rules of Civil Procedure permits them to make responses to interrogatories and requests for production of documents without stating their objections, including objections based on privilege. The plain language of Fed.R.Civ.P. 33(b)(4)[3] clearly requires the statement of specific objections and the rule provides that failure to do so may result in a waiver of the objection. *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2173, at 296 (1994) ("The Treatise"). While Fed.R.Civ.P. 34 does not explicitly provide for waiver when objections are not stated, Rule 34(b), like Rule 33(b)(4), requires the reasons for any objections to be explicitly stated.[4] Therefore, the Court finds the waiver to be an implicit one. Some courts have previously found that failure to make an explicit timely objection based on privilege waives the objection. *Id.* § 2213, at 427–28. The Treatise endorses this view, especially in light of the 1993 amendments adding Rule 26(b)(5) which specifically requires a claim of privilege to be expressly made with a description of the documents withheld. *Id.* The Court agrees and adds that there would be no point to require such a specific and detailed procedure for objections unless it were important to follow it and there were consequences for failure to do so. The Treatise cautions that courts "should avoid hair-trigger findings of waiver." *Id.* The Court finds the reasoning of the Treatise to be sound, both as to implicit waiver and the caution. Such a construction of Rule 34 makes it similar to, and compatible with, Rule 33(b)(4) which provides for waiver, and also relief from waiver for good cause. Courts have long viewed the discovery rules as an integrated mechanism to be read in *pari materia*. *Id.* § 2204, at 363. Rules 33(b)(4) and 34(b) should be so read.

Some courts have expressed a view that perhaps the waiver should not extend to privileged matters. *Id.* § 2173, at 295. The Treatise opines that the better view, and the one consistent with the rules, including Rule 26(b)(5), is that there is no exception to the waiver requirement. However, it should be noted that for those courts which feel that the waiver may be too draconian a punishment,[5] the answer is that the waiver is not irrevocable. Rather, the objection is waived

2. While defendants ask for a protective order covering supplier lists, prices charged to customers, and other confidential information, they only justify protection of supplier lists. Any protective order shall be so limited.

3. Rule 33(b)(4) provides: "Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown."

4. Rule 34(b) provides:

> The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

5. *Jayne H. Lee, Inc. v. Flagstaff Industries Corp.*, 173 F.R.D. 651, 657 n. 16 (D.Md.1997).

unless "excused by the court for good cause shown." Fed.R.Civ.P. 33(b)(4). For determining good cause, the Court should look into the circumstances behind the failure to object, whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance. The Court may also look at subsequent actions by the party to ascertain whether it was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner. The Court should always take into account any resulting prejudice or lack thereof, and the need to preserve the integrity of the rules by serving as a warning to other litigants. Finally, the Court may assess lesser sanctions should that be more appropriate.

In the instant case, defendants simply did not raise any objection based on confidentiality in their discovery responses. On the other hand, it appears that defendants' answers to the discovery requests were timely made. There was no prior history of delay. When plaintiffs contacted defendants' counsel to complain about the discovery responses, it appears that defendants very quickly, if not immediately, made known their objection to the discovery based on supplier list confidentiality. It is not quite so clear, however, that defendants have produced all unobjectionable information or made an attempt to redact documents of confidential information. (There may be sanctions for this.) On the other hand, defendants very quickly and within the same month, filed a motion for a protective order which set out in detail defendants' objection to producing the information. Furthermore, defendants apparently would have immediately produced the information so long as it was only viewed by plaintiffs' outside counsel, and they proffered a consent protective order to that end.

As the matter stands, the Court finds that, pursuant to Rules 33(b)(4) and 34(b), by failing to state specific objections in their discovery responses, defendants waived any objection to not answering interrogatories or producing documents based on the privilege of confidential business documents. On the other hand, the Court finds that this violation was not egregious because there has not been a history of delay or other bad faith, that defendants acted quickly in making their position known concerning the confidentiality of documents, and defendants promptly filed a motion for a protective order. Plaintiffs have not been substantially hindered or delayed as a result of defendants' initial failure to set out the privilege objection in the discovery responses. Therefore, the Court will excuse defendants' waiver of the privilege objection, but retains the right, after viewing all the circumstances of this case, to assess lesser sanctions should that be appropriate. (As will be seen, the Court will only assess lesser sanctions if defendants have failed to produce non-privileged discovery information to plaintiffs as required by Rule 33(b)(1) and Rule 34(b).) Consequently, the Court will now proceed to determine whether defendants' motion for a protective should be granted.

### *B(2) Showing Required for Protective Order*

In order to obtain a protective order, defendants are required to demonstrate good cause and have the burden of showing the same. Furthermore, defendants are required to "make a particular request and a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one." *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991). "Even though the express language of Rule 26(c) does not set out time limits in which a motion for a protective order must be made, there is an implicit requirement that the motion must be timely ...." *Id.* at 413. A motion for a protective order is timely if made prior to the date set for producing the discovery. *Id.* A later filing may be excused upon a showing of good cause. *Id.*

In the instant case, defendants did not state their objections in their discovery responses as required, nor did they file a motion for a protective order prior to serving their responses. But, they did file a motion for a protective order very soon after plaintiffs' complained and prior to plaintiffs' filing

a motion to compel. Defendants even submitted a proposed protective order to plaintiffs. *See* n. 1, *supra.* In other words, defendants have not been sitting back doing nothing, but immediately tried to work out a compromise with plaintiffs. For much the same reasons that the Court has excused defendants' failure to state their confidentiality objections in their discovery responses, the Court finds that defendants have sufficiently timely moved for a protective order to justify excusing technical non-compliance.

The remaining question is whether defendants have sufficiently justified the request for a protective order. A request for a protective order must be made with appropriate specifics and once it is determined that confidential information is being sought, the party opposing confidential treatment must show that the information is sufficiently relevant to outweigh the harm of disclosure. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *supra,* § 2043 (1994). This requires a balancing "of all pertinent circumstances, including dangers of abuse, good faith, and the availability of other means of proof." *Id.,* at 559–560. Finally, in most cases, as here, the key issue often is not whether the information will be disclosed, but under what conditions it should be disclosed. *Id.,* at 565.

Plaintiffs first argue that defendants are not entitled to a protective order under any showing unless the supplier information constitutes a trade secret, which it does not in this case. The Court has reviewed the cases cited by plaintiffs, but does not find that those cases support that proposition.[6] Rule 26(c)(7) of the Federal Rules of Civil Procedure provides for a protective order upon a showing "that a trade secret *or other confidential* research, development, *or commercial information* not be revealed or be revealed only in a designated way." (emphasis added) The Treatise points out, "[o]n its face, the rule goes beyond trade secrets" and provides protection for other commercial information. 8 Wright, *supra,* § 2043, at 556 (also rejecting the "true" trade secret test as being difficult to import into Rule 26(c) and as creating needless difficulties). Rule 26(c)(7) goes beyond trade secrets and covers other confidential business information.

The Court returns to the question of the adequacy of defendants' showing of need for a protective order. Defendants' specific showing comes in the affidavit by defendants' president which relates that (1) one authorized distributor of plaintiffs' products told defendants that it would be terminated if plaintiffs found out it sold furniture to defendants; (2) other furniture retailers and wholesalers are of the view that plaintiffs attempt to maintain the price of their furniture by specifying minimum prices and threatening action against distributors who do not adhere to those prices; (3) it is "common knowledge" in the furniture industry that plaintiffs attempt to maintain prices by terminating dealers who sell at less than retail; (4) "upon information and belief" suppliers want their relationship to defendants kept in confidence; (5) defendants do not have a formal policy because they are a small business, but maintain the identity of suppliers in confidence by telling all employees that the information is confidential and not to inform the customers of the source; and (6) harm could come to defendants from termination of suppliers because, at any given time, defendants have a large amount of orders and the termination of the distributor by plaintiffs would cost thousands of dollars in sales and customer goodwill.

The Court finds this showing of confidentiality and harm to be minimal. Even though defendants need not prove the supplier lists to be a trade secret, in order to obtain a protective order with respect to confidential commercial information, a party still must show reasonable efforts and expectations under the circumstances as to maintaining the secrecy of the information. Defendants' efforts are rather minimal, but this may be partially explained based on defendants' small size. And, the policy may be seen as sufficient because supplier information is not confidential vis-a-vis the whole world, but

6. *In re Wilson,* 149 F.3d 249, 252 (4th Cir.1998); *In re Wilson,* 165 F.3d 913 (4th Cir.1998) (unpub.); and *Centurion Industries, Inc. v. Warren Steurer and Associates,* 665 F.2d 323 (10th Cir. 1981). Those cases did not decide that only trade secrets come within the purview of Fed. R.Civ.P. 26(c)(7). Instead, trade secrets were simply the matter before the court.

only as to plaintiffs. Defendants' policy appears to accomplish this goal. Likewise, defendants' showing that their suppliers expect the information to be kept confidential is minimal and largely conclusory. But, supplier affidavits may be hard to come by under the circumstances when defendants cannot guarantee that plaintiffs would never see them. Thus, the Court does not totally discount these conclusory statements. The Court finds defendants have sustained their burden of showing confidentiality.

Having established confidentiality (albeit minimally), defendants are next required to show that they would be harmed by release of the information. The harm in this case stems from allegedly predatory motive by plaintiffs. This showing is also weak. Defendants only cite one supplier as expressly verbalizing a fear of disclosure. The rest of defendants' evidence comes from informed speculation, not actual past actions. Again, it is not that such evidence has no value, but rather, that its value is merely reduced because of its speculative nature. Plaintiffs argue that defendants could not be put out of business even if they did retaliate because plaintiffs only constitute one out of twenty lines of furniture sold by defendants. However, nothing in Rule 26 restricts a protective order to such extreme situations. Loss of business, sales, and reputation, are sufficient, although lesser harms may call for less stringent protection. The fears expressed by defendants have been taken into account by courts in deciding to issue a protective order covering supplier lists.[7] Those cases persuade the Court that defendants have shown sufficient possibility of harm which can support a protective order.

In the instant case, the Court has so far determined that defendants have minimally shown that (1) they treat their suppliers' identities with some degree of confidentiality, and (2) there is some potential risk of cognizable harm if plaintiffs obtain the information should they use it to dissuade the suppliers from dealing with defendants. Plaintiffs have done nothing to persuade the Court that such fears are without foundation, such as by showing that plaintiffs will not contact or take any action against suppliers who are identified. This is another factor in defendants' favor.

The effect of disclosure on non-parties constitutes the final factor with respect to evaluation of potential harm. *United States v. Dentsply Intern., Inc.*, 187 F.R.D. 152, 161 (D.Del.1999). This also lies in defendants' favor because non-parties are involved in this case. Defendants have offered some information that their suppliers also fear having their identities revealed. As noted earlier, the showing here is weak because there are no supplier affidavits, but perhaps understandably in a case such as the instant one.

For all the above reasons, the Court finds that defendants have made a sufficient showing to obtain a protective order. Defendants' request is limited, and will not foreclose plaintiffs from viewing the information or presenting proof of counterfeit furniture. It is made in good faith and not for an ulterior purpose.

The next consideration is whether plaintiffs have met their burden of showing a sufficient need for the unrestricted disclosure of the identities of defendants' suppliers which outweighs any potential harm to defendants from disclosure. *In re Independent Service Organizations*, 162 F.R.D. 355 (D.Kan.1995). In the instant case, plaintiffs'

7. In a commercial situation, other courts have recognized that there is an interest in the confidentiality of supplier lists because of fears of predatory or harassing practices. *Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80 (S.D.Ohio 1981)(competitor seeking customer lists); *Russ Stonier, Inc. v. Droz Wood Co.*, 52 F.R.D. 232 (E.D.Pa.1971) (allegations that defendant copied plaintiff's products, protective order granted to protect against possible harassing, threatening or intimidating of defendant's customers and suppliers); *Moore U.S.A., Inc. v. Standard Register Comp.*, No. 98-CV-485C(F), 2000 WL 876884 (W.D.N.Y. May 26, 2000)(suppliers identities restricted to counsel's eyes only); *In re Independent Service Organizations Antitrust Litigation*, 162 F.R.D. 355 (D.Kan.1995)(parties agree confidential supplier list is trade secret—possibility that plaintiff may dissuade suppliers from doing business with defendants sufficient to demonstrate potential harm from even inadvertent disclosure); *Professional Microfilming, Inc. v. Houston*, 661 S.W.2d 767 (Tex.App.1983)(customer lists, suppliers, price and discounts, all found to be confidential as between competitors).

claim they must have the supplier information to pursue their counterfeiting claim. They argue they will not be able to make a determination concerning whether the furniture. originated from plaintiffs unless they can share the supplier information with plaintiffs' officers and employees. However, plaintiffs fail to state why the identities of the suppliers are necessary. Plaintiffs necessarily must have had information that defendants sold counterfeit goods prior to bringing the lawsuit, and such information most likely would have come from viewing products sold by defendants. A list of defendants' suppliers, to the extent that some are also plaintiffs' distributors, merely shows a possibility that defendants, in fact, purchased some of plaintiffs' products through them. It does not prove that other indirect purchases were not plaintiffs' furniture.[8] The Court finds this argument fails to show a substantial need for unrestricted access to the information because it does not prove or disprove the counterfeiting claims. *In re Independent Service Organizations,* 162 F.R.D. 355.[9] Finally, plaintiffs fail to show why outside counsel would be unable to trace defendants' sales to plaintiffs' distributors without the help of plaintiffs' officers and employees. They do not show this burden outweighs any harm to defendants.

Having determined that supplier lists are entitled to some protection, the scope of the protective order is the next consideration. In the instant case, defendants make a proposal that disclosure be limited to outside attorney's eyes only. Plaintiffs do not propose an alternative plan. While not mentioned by the parties, another way of dealing with this situation would be for defendants to produce the information with the suppliers identities redacted. However, neither party has suggested that procedure and, therefore, the Court is left with adopting defendants' proposed procedure that documents or interrogatories containing the identities of the suppliers to defendants of plaintiffs' products shall be for plaintiffs' outside counsel's eyes only.

The final matter before the Court concerns plaintiffs' complaint that defendants have refused to answer any interrogatory or produce any documents, even though this would not have identified suppliers of plaintiffs' products. If so, then defendants far overstepped their bounds in not answering interrogatories or producing documents which do not contain confidential information. The court in *In re Independent Service Organizations,* 162 F.R.D. 355, expressly warns that a party cannot parlay requests for protection of the identities of suppliers into a categorical refusal to answer relevant questions. If defendants have done this, the Court would be inclined to grant plaintiffs limited attorney's fees for bringing and obtaining the motion to compel because it would find defendants' refusal to immediately supply such information to be well outside of their request for protection of the identities of their suppliers of plaintiffs' products.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel defendants to

8. Plaintiffs have failed to make any *prima facie* showing that they have information indicating that the furniture is counterfeit. They appear to essentially admit that they cannot tell whether furniture sold by defendants came from plaintiffs unless they can trace the furniture back to its source. However, such a process involves a tremendous invasion into defendants' privacy without plaintiffs ever having presented any basis for their conclusory speculation of counterfeiting. The Court is not inclined to act on that argument.

9. Plaintiffs argue that *In re Independent Service Organizations Antitrust Litigation,* 162 F.R.D. 355, is inapposite because there, the parties agreed that the suppliers identities constituted trade secret information and the lawsuit involved antitrust violations, whereas the instant case involves a trademark action. As previously noted, the Court has determined that Rule 26(c)(7) covers confidential commercial information in addition to trade secret information, and that defendants did make a slim, but adequate, showing that the information was confidential and that potential harm could result from disclosure. Consequently, the Court disagrees and finds *In re Independent Service Organizations* to be strong support for the instant decision. It should be noted that the court in *In re Independent Service Organizations* required a particularized showing that the supplier's sale infringed a patent before it would order disclosure. In this case, the equivalent ruling would be that plaintiffs would have to show actual counterfeit furniture prior to the Court permitting a fishing expedition into defendants' supplier lists.

provide discovery responses (docket no. 20) is granted and such interrogatories and documents shall be answered or produced forthwith, but that defendants' motion for a protective order (docket no. 14) is also granted, and that defendants may produce the information or documents which contain the identities of defendants' suppliers of products manufactured by plaintiffs in a form which shall be viewed by plaintiffs' outside counsel's eyes only and may only be used for purposes of the instant litigation.

**IT IS FURTHER ORDERED** that, because both parties prevailed in part, the Court declines to assess costs or expenses, except it will assess partial costs and expenses to plaintiffs should it turn out that defendants have withheld interrogatories or documents, now ordered to be answered or produced, which did not involve or contain the identities of suppliers of plaintiffs' products.

